**Rodger BLOYER, Petitioner–Appellant,**

v.

**Howard PETERS, III, Director, Illinois Department of Corrections, Respondent–Appellee.**

No. 92–3053.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1993.

Decided Sept. 27, 1993.

Sherry R. Silvern, Aurora, IL (argued), for petitioner-appellant.

Steven J. Zick, Office of the Atty. Gen., Crim. Appeals Div., Chicago, IL (argued), for respondent-appellee.

Before POSNER, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

The petitioner, Rodger Bloyer, seeks federal habeas corpus review in a case arising out of the Illinois state courts. Mr. Bloyer contends that, in violation of his federal due process rights, he was convicted of an offense that the Illinois Supreme Court had declared unconstitutional six years prior to his conviction. The district court concluded that the judgment of the Illinois state courts was based entirely upon state law and was not cognizable on habeas. For the reasons that follow, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. *Statutory Framework*

An individual commits the felony offense of unlawful restraint under Illinois law when

he knowingly without legal authority detains another. Ill.Rev.Stat., ch. 38, ¶ 10–3 (1987).

An individual commits armed violence under Illinois law when

> while armed with a dangerous weapon, he commits any felony defined by Illinois law. Ill.Rev.Stat., ch. 38, ¶ 33A–2 (1987).

In 1983, the Illinois Supreme Court held that a conviction for armed violence based on the predicate felony of unlawful restraint violated the Illinois constitutional assurances of proportionate penalties and due process. *People v. Wisslead,* 94 Ill.2d 190, 68 Ill.Dec. 606, 446 N.E.2d 512 (1983). In its analysis, the court compared the statutory offense of kidnapping with the statutory offense of unlawful restraint. It noted that, under the Illinois Criminal Code, kidnapping was a more serious felony and thus carried a greater sentence than unlawful restraint.

The court then compared the sentencing consequences of adding another element, use of a weapon, to each of the offenses. If a defendant was convicted of kidnapping with the use of a weapon, prosecution could be sought for aggravated kidnapping. However, because, in 1986, the Illinois Code did not contain the offense of aggravated unlawful restraint, the prosecutorial equivalent of seeking an enhanced unlawful restraint conviction was to seek a conviction for armed violence predicated on unlawful restraint.

The Illinois Supreme Court determined that this result created an unreasonable anomaly in the Illinois sentencing scheme. Specifically, if aggravated kidnapping and armed violence predicated on unlawful restraint were each committed with the same weapon, the less serious offense of unlawful restraint, elevated to armed violence, became a more serious class X felony than kidnapping, which when elevated to aggravated kidnapping became a class 1 felony. Aggravated kidnapping carried a lower sentencing range than armed violence predicated on unlawful restraint. The court also noted that, in similar fashion, unlawful restraint when committed with a weapon was a lesser included offense of forcible detention, but carried higher penalties under the Illinois sentencing scheme.

The Illinois court next observed that sections 2 and 11 of article I of the Illinois Constitution guarantee proportionate sentencing. Section 2 of article I of the Illinois State Constitution provides:

> No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws.

Section 11 of article I of the Illinois State Constitution in part provides:

> All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.

"The policy underlying these constitutional provisions would be violated if the penalty prescribed for an offense is not as great or greater than the penalty prescribed for a less serious offense." *Wisslead,* 68 Ill.Dec. at 608, 446 N.E.2d at 514. Accordingly, the court concluded that: "This sentencing scheme violates the constitutional assurances of proportionate penalties and due process...." *Id.* 68 Ill.Dec. at 609, 446 N.E.2d at 515.

In 1987, in apparent response to *Wisslead,* the Illinois legislature enacted the aggravated unlawful restraint statute. Under the new statute:

> A person commits the offense of aggravated unlawful restraint when he knowingly without legal authority detains another while using a deadly weapon. Ill.Rev. Stat., ch. 38, ¶ 10–3.1 (1987).

## B. *Prior State Proceedings*

In 1989, in Illinois state court, Rodger Bloyer was convicted of armed violence predicated on unlawful restraint. Mr. Bloyer initially had been charged with: (1) unlawful restraint; (2) armed violence predicated on unlawful restraint; and (3) aggravated unlawful restraint. The charges alleged that Mr. Bloyer forced a young woman, at knifepoint, into his vehicle and threatened to harm her if she did not submit to his sexual demands. The young woman escaped the vehicle physically unharmed and telephoned the police. She gave the police the license plate number of the vehicle into which she had

been forced and the police traced the vehicle to Mr. Bloyer. Upon the officers' request, Mr. Bloyer consented to a search of the vehicle. The officers found a hunting knife between the two front seats and, after the young woman identified the knife, Mr. Bloyer was arrested.

Mr. Bloyer has never contested the facts supporting the charges and, after a one-day bench trial, was found guilty on December 21, 1988. The court continued further proceedings to allow the parties to brief whether the unlawful restraint and the aggravated unlawful restraint counts "merged" with the armed violence count. After considering the parties' submissions, the court concluded that the three counts did merge and entered a conviction solely on the charge of armed violence predicated on unlawful restraint, a class X felony. Mr. Bloyer was sentenced to twelve years' imprisonment.

In 1990, on direct appeal, the Illinois appellate court affirmed Mr. Bloyer's conviction. Mr. Bloyer argued on appeal that the offense of armed violence predicated on unlawful restraint no longer existed after *Wisslead* was decided in 1983. The state appellate court nevertheless affirmed Mr. Bloyer's conviction because it had concluded that the 1987 addition of the statutory offense of aggravated unlawful restraint to the Illinois Criminal Code cured the constitutional concerns identified in *Wisslead*. *People v. Bloyer*, 200 Ill.App.3d 872, 146 Ill.Dec. 857, 558 N.E.2d 1056 (1990). In the view of the Illinois appellate court, the new statute created "a parallel and proportional structure between the various grades of unlawful restraint and kidnapping," *id.*, 146 Ill.Dec. at 859, 558 N.E.2d at 1058, and, consequently, "the penalties for the offense are proportional, and the constitutional defect recognized in *Wisslead* has been cured." *Id.* The court went on to hold that it was permissible for the legislature to give the prosecutor the option of charging either crime under the armed violence provision of the code:

> It remains true that, as is the case with any felony, where *either* a simple kidnapping or a simple unlawful restraint is accomplished with the use of a dangerous weapon, the prosecutor retains the option

of prosecuting the offender for armed violence based on the underlying simple felony.

*Id.* In December 1990, the Illinois Supreme Court denied Mr. Bloyer's petition for review without comment. *People v. Bloyer*, 135 Ill.2d 559, 151 Ill.Dec. 386, 564 N.E.2d 841 (1990).

## C. *The Habeas Proceeding*

In 1991, Mr. Bloyer filed a petition for a writ of habeas corpus in federal district court. He raised the sole issue of whether the conviction of armed violence predicated on unlawful restraint violated his federal due process rights because he had been convicted of an offense that the Illinois Supreme Court had declared unconstitutional six years before his conviction.

In June 1992, the district court denied Mr. Bloyer's petition on the ground that no federal right of his had been violated. Nevertheless, in dicta, the district court expressed the view that the 1987 amendments to the Illinois Criminal Code did nothing to cure the disproportionate sentencing problem identified in *Wisslead* and that therefore the Illinois court was "most likely erroneous" in deferring to prosecutorial discretion in charging an offense. R. 19, Mem. Op. at 7. The district court noted that, in *People v. Christy*, 139 Ill.2d 172, 151 Ill.Dec. 315, 564 N.E.2d 770 (1990), decided after the Illinois appellate court's decision in *Bloyer*, the Illinois Supreme Court considered the effect of allowing prosecutorial discretion to charge either aggravated kidnapping or armed violence predicated on kidnapping when kidnapping was committed with a weapon. In *Christy*, the Illinois Supreme Court held that it was unconstitutional for two different offenses to have identical elements and carry different penalties. The court rejected the rationale relied on by the appellate court in *Bloyer* and wrote that the offense with the stiffer penalty would "effectively nullify" the offense with the less severe penalty because a skilled prosecutor would always charge the offense with the stiffer penalty:

> Generally, prosecutorial discretion is a valuable aspect of the criminal justice system. In the present case, however, prose-

cutorial discretion will effectively nullify the aggravated kidnapping statute, as skilled State's Attorneys will usually seek the more severe sentence and, therefore, charge defendants with armed violence rather than aggravated kidnapping. An ineffective aggravated kidnapping statute is not what the legislature intended when it enacted both the armed violence and aggravated kidnapping statutes.

*Christy*, 151 Ill.Dec. at 319, 564 N.E.2d at 774 (citation omitted).

The district court in this case found the *Christy* rationale to be on point: Enactment of the aggravated unlawful restraint offense does nothing to cure the problems of disproportionate sentencing that *Wisslead* denounced if the prosecutor can simply ignore the aggravated unlawful restraint offense and charge a defendant with armed violence predicated on unlawful restraint. The district court also noted that the 1987 amendments did nothing to resolve the sentencing discrepancy between armed violence predicated on unlawful restraint and forcible detention. Ultimately, however, the district court concluded that the only issue involved in *Wisslead* was the state law concern of proportional sentencing. Accordingly, the district court held that the issue was not cognizable on federal habeas. This appeal follows.

## II

## ANALYSIS

### A. *Threshold Matters*

Mr. Bloyer presents one basic argument to this court. He argues that he was found guilty of an offense determined previously by the state courts to be unconstitutional. He submits that to be found guilty of such an offense is to be found guilty of a nonexisting offense. The imposition of such a conviction, he submits, violates the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. *See Ex parte Royall*, 117 U.S. 241, 248, 6 S.Ct. 734, 738, 29 L.Ed. 868 (1886) (conviction under an uncon-

stitutional law is void); *Johnson v. United States*, 805 F.2d 1284, 1288 (7th Cir.1986) (conviction based on an offense declared unconstitutional is the "quintessence of denying due process"); *People v. Miller*, 144 Ill. App.3d 69, 98 Ill.Dec. 74, 493 N.E.2d 1095 (1986) (conviction based on a crime that does not exist is unconstitutional).

Before a petition for a writ of habeas corpus may be considered by a United States district court, it is necessary, as a general principle, that the federal issue to be adjudicated be presented in a timely manner to the state courts and that the petitioner avail himself of every available state proceeding for the vindication of that right. If the issue was waived in the state courts, it is necessary that the petitioner establish cause and prejudice. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The district court recited in its opinion that the parties were in agreement that the petitioner had exhausted all available state procedures. That conclusion is not challenged before us and we shall therefore have nothing further to say about the matter. With respect to the matter of waiver, the situation is somewhat more complex. In its brief before us, the state articulates the issue presented by the petitioner in federal terms. It then notes: "Petitioner raised this claim on direct appeal."[1] Within a page, however, we are told that the district court was erroneous in its determination that the state had not raised a procedural default argument by claiming that Mr. Bloyer had failed to raise the issue as a federal claim in the district court.[2]

Our independent examination of the record convinces us that the state failed to apprise the district court that it was contesting whether the petitioner had raised the issue in federal terms in a manner reasonably calculated to alert the court that it was asserting a defense based on waiver. On this record, the district court was justified in concluding that the issue of waiver was not before it.

1. Appellee's Br. at 8.

2. Appellee's Br. at 9.

B. *The Merits*

1.

"A federal court may grant collateral relief to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Reed v. Clark*, 984 F.2d 209, 210 (7th Cir.1993) (quoting 28 U.S.C. § 2254(a) (1988)). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, — U.S. —, —, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). Thus, insisting that a state violated its own laws does not "[m]etamorphos[e] state into constitutional law." *Reed*, 984 F.2d at 210.

Mr. Bloyer articulates his case in terms of the Federal Constitution. As we noted at the beginning of the last subsection, Mr. Bloyer submits that the imposition of his conviction amounts to the imposition of a conviction on the basis of a nonexistent crime and, for that reason, violates the Due Process Clause of the Fourteenth Amendment. In evaluating his submission, therefore, our task is to determine whether he has actually been convicted of a crime that does not exist. This inquiry requires that we examine state law, both statutory and caselaw.

We turn first to the statutes of the State of Illinois. Mr. Bloyer was convicted of the offense of armed violence. Armed violence is indisputably an offense that existed under Illinois law in 1989 and indisputably still exists today.[3] To be convicted under Illinois' armed violence statute, a defendant must use a dangerous weapon to commit a "predicate" felony. Mr. Bloyer was charged with the predicate felony of unlawful restraint. Unlawful restraint is indisputably an offense that existed in 1989 and indisputably still exists today.[4]

■ Nonetheless, Mr. Bloyer maintains that the result of *Wisslead* was to make the offense of armed violence predicated on unlawful restraint unconstitutional, and thus nonexistent. We cannot accept this argument. As the state notes, in *Johnson* this court expressly stated that what the Due Process Clause forbids is punishing a person for "conduct that the polity has not made criminal." *Johnson*, 805 F.2d at 1288. We do not read *Wisslead* as having decriminalized the conduct for which Mr. Bloyer was convicted. Rather, in that case, the Illinois Supreme Court invalidated a particular sentencing scheme that it found disproportionate under the Illinois Constitution. Specifically, the Illinois court in *Wisslead* held that the sentencing scheme produced by the intersection of those statutes violated a specific guarantee of the Illinois Constitution that requires proportionality in sentencing.[5] We do

---

3. Ill.Rev.Stat., ch. 38, ¶ 33A–2 (1987).

4. Ill.Rev.Stat., ch. 38, ¶ 10–3 (1987).

5. Although the Illinois Constitution has an explicit provision requiring proportionate sentencing, there is no counterpart in the Federal Constitution. *See Harmelin v. Michigan*, — U.S. —, —, 111 S.Ct. 2680, 2696, 115 L.Ed.2d 836 (1991) ("those who framed and approved the Federal Constitution chose, for whatever reason, not to include within it the guarantee against disproportionate sentences that some State Constitutions contained"); *Pulley v. Harris*, 465 U.S. 37, 45, 104 S.Ct. 871, 876, 79 L.Ed.2d 29 (1984) (rejecting proportionality review in capital cases).

The mere mention of "due process" in this context cannot be said to raise in any reasonable way the possibility that Illinois was relying upon federal constitutional principles in fashioning its holding in *Wisslead*. In *Michigan v. Long*, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983), the Supreme Court was confronted with a state supreme court decision that cited both the Michigan state constitution and the Federal Constitution search and seizure provisions. The defendant argued that the Michigan constitutional provision provided an adequate and independent state law ground and thus the decision could not be reviewed by the United States Supreme Court. Specifically, the defendant argued that Michigan interpreted its constitution more broadly than the Federal Constitution had been interpreted. *Id.* at 1038, 103 S.Ct. at 3474. It was unclear whether the court in *Long* had relied upon the state or Federal Constitution. Therefore, the Court concluded that it would presume that the state court relied on federal grounds. However, the Court also held that, had the state court clearly relied upon the state constitution, the decision would not be open to federal review: "It is fundamental that state courts be left free and unfettered ... to interpret their state constitutions." *Id.* at 1041, 103 S.Ct. at 3476. The rule in *Long* was made applicable to habeas actions in *Harris v. Reed*, 489 U.S. 255, 261, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989). However, in *Coleman v. Thompson*, — U.S. —, 111 S.Ct. 2546, 115

not believe that the holdings of the Illinois Supreme Court in *Wisslead* or in *Christy* can be fairly characterized as determining that the offense for which Mr. Bloyer stands convicted does not exist in Illinois. Rather, we believe that the court addressed only the issue of whether the statutory sentencing scheme violated the state constitution.

The cases upon which Mr. Bloyer relies are not based on the sentencing proportionality guarantees of Illinois law. Rather, they hold, albeit in a variety of contexts, that a person may not be convicted of an offense that is nonexistent because for one reason or another, an essential element under Illinois law has not been established.[6] Similarly, *United States ex rel. Vanskike v. O'Leary*, 719 F.Supp. 659 (N.D.Ill.1989), upon which Mr. Bloyer places great emphasis, is of no assistance to him. *Vanskike* did not deal with a situation that involved the application of the Illinois constitutional guarantee with respect to proportional sentencing. It simply held that a person cannot be deemed to have been convicted of a crime for which he has not been tried. In Illinois, there are two forms of aggravated battery: 1) committing battery with a deadly weapon; and 2) committing battery by inflicting great bodily harm. As a matter of state law, a conviction for armed violence cannot be premised on the first; it can be premised on the second. In Vanskike's trial, only the first theory was submitted to the jury. Therefore the second could not be the basis of an armed violence conviction.

### 2.

In his reply brief, Mr. Bloyer invites our attention to *People v. Faysom*, 131 Ill. App.3d 517, 86 Ill.Dec. 566, 475 N.E.2d 945 (1985). In *Faysom*, the Illinois appellate court vacated a conviction on armed violence predicated on unlawful restraint based upon the court's interpretation of *Wisslead*. Significantly, *Faysom* was decided before the 1987 addition of aggravated unlawful restraint to the Illinois Criminal Code that the *Bloyer* court found curative of the problem identified by *Wisslead*. Moreover, to the extent that Mr. Bloyer's citation of *Faysom* might be construed as suggesting a new argument that the Illinois courts are applying Illinois state law in an arbitrary and capricious manner so as to violate federal concepts of due process or equal protection,[7] we are

L.Ed.2d 640 (1991), the Supreme Court held that the presumption in *Long* and *Harris* ought to apply only when "a federal court has good reason to question whether there is an independent and adequate state ground." *Coleman*, —— U.S. at ——, 111 S.Ct. at 2559.

**6.** For instance, Mr. Bloyer relies upon *People v. Kessinger*, 133 Ill.App.3d 831, 88 Ill.Dec. 853, 854, 479 N.E.2d 466, 467 (1985), in which the Illinois appellate court held that, under Illinois law, the offense of possession of a deadly weapon could not be used as the basis of a conviction for armed violence and that the entry of such a conviction was constitutional error because it amounted to convicting a person of a crime that did not exist. In *People v. Pride*, 144 Ill.App.3d 612, 98 Ill.Dec. 387, 494 N.E.2d 509 (1986), the court, noting that under Illinois law the crime of voluntary manslaughter cannot serve as the basis for an armed violence conviction, recognized the error on appeal even though the defendant had failed to file a motion to withdraw his guilty plea. The court reasoned that the "argument that a criminal charge is void can be raised at any time regardless of whether it was properly preserved for review." *Id.* 98 Ill.Dec. at 389, 494 N.E.2d at 511.

Similarly, *People v. McCarty*, 94 Ill.2d 28, 67 Ill.Dec. 818, 445 N.E.2d 298 (1983), is inapposite. The court held that a robbery conviction could not, as a matter of state law, serve to enhance a later misdemeanor conviction to a felony and that a sentence based on such an enhancement was subject to collateral attack as void. *People v. Sierra*, 122 Ill.App.3d 822, 78 Ill.Dec. 245, 461 N.E.2d 1079 (1984), although dealing with slightly different offenses, reached the same result. In *People v. Waelterman*, 112 Ill.App.3d 483, 68 Ill.Dec. 173, 445 N.E.2d 817 (1983), the same principles applied when a charge of armed violence was based on the predicate felony of aggravated battery with a deadly weapon, a result which the Illinois Supreme Court earlier had held to be contrary to the legislative intent. *See People v. Haron*, 85 Ill.2d 261, 52 Ill.Dec. 625, 422 N.E.2d 627 (1981). The conviction was void and therefore the matter could be raised at any time. Similarly, when the conviction was based on a defective indictment, the same result obtained. *See People v. Kavinsky*, 98 Ill.App.3d 579, 53 Ill.Dec. 705, 424 N.E.2d 340 (1981).

**7.** *See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990) ("federal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due

constrained to point out that arguments raised for the first time in reply briefs are waived. *Bobo v. Kolb,* 969 F.2d 391, 400 (7th Cir.1992) ("[a]ll arguments for reversal must appear in the opening brief so that the appellee may address them") (quoting *Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir.1990), and citing Circuit Rule 28(f)).

In any event, the more natural reading of the sparse body of Illinois law directly on point reveals that Illinois law has been evolving and that Mr. Bloyer's case is part of that evolution. Whether the invalidation of the sentencing scheme denounced by Illinois in *Wisslead* has since been corrected or still exists is a matter of state law and as such is exclusively entrusted to the state courts of Illinois.[8]

> It has long been understood that a state may violate its own law without violating the Federal Constitution. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

*Jones v. Thieret,* 846 F.2d 457, 460 (7th Cir.1988) (citations omitted).

Mr. Bloyer's case is difficult because, as the district court noted in dicta, the Illinois disposition does appear to conflict with the Illinois Supreme Court's decision in *Christy.* Nonetheless, if the law has evolved in such a manner that, if his case were re-tried today, the outcome would be different, this is the responsibility of the Illinois courts and the executive authority of that state, not of the federal courts. *See Jones,* 846 F.2d at 463 ("The evolution of legal rules is a feature of any legal system. The remedies lie in state law and in an appeal to the pardoning power.").

process [violation]"); *McCleskey v. Kemp,* 481 U.S. 279, 291 n. 7, 107 S.Ct. 1756, 1766 n. 7, 95 L.Ed.2d 262 (1987) ("[i]t would violate the Equal Protection Clause for a State to base enforcement of its criminal laws on an ... 'arbitrary classification' ") (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)).

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

**8.** We note that the Illinois Supreme Court denied Mr. Bloyer *further review several weeks after its* decision in *Christy.* It gave no explanation. If this denial of further review was an error, it was an error of state law and, in itself, does not constitute a federal constitutional violation.