Charles WILLIAMS, Petitioner,

v.

Lamark CARTER, Warden, Respondent.

No. 97 C 2728.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 23, 1999.

---

Charles Williams, Dixon, IL, Pro se.

Charles J. Aron, Chicago, IL, for Petitioner.

Darryl Belmonte Simko, Chief of Criminal Appeals, Illinois Attorney Generals Office, Chicago, IL, for Respondent.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Charles Williams was convicted of first degree murder in Illinois state court in 1991 and sentenced to 50 years in prison. He petitioned for habeas relief under 28 U.S.C. § 2254 (federal habeas corpus for state prisoners). Mr. Williams argues that (1) he was actually innocent of first degree murder, and (2) he received ineffective assistance of counsel. I deny his petition for habeas relief.

### I.

Mr. Williams was convicted after a jury trial in 1991. Several witnesses testified that they observed Mr. Williams aim a pistol at the victim, Leonard Spencer, and fire several shots. Mr. Williams then ran down the street and entered a waiting car, which sped away from the scene. Mr. Spencer died as a result of a gunshot

wound to his chest. *See People v. Williams*, 264 Ill.App.3d 1125, 225 Ill.Dec. 644, 683 N.E.2d 1307 (1994) (unpublished order). State court determinations of factual issues are "presumed to be correct on federal habeas review." *Porter v. Gramley*, 112 F.3d 1308, 1316 (7th Cir.1997).

Mr. Williams appealed his conviction to the Illinois Appellate Court, arguing that (1) the trial court should have permitted a continuance so that he could investigate the criminal record of Jimmy Johnston, a state witness, and (2) he received ineffective assistance of counsel because his trial counsel failed to (a) address certain issues concerning the lineup and (b) interview or call potential witnesses. The Illinois Appellate court affirmed, stating that the record on appeal was "not sufficient for this court to ascertain the propriety of the defendant's contention[s]" or was "wholly devoid of facts supporting defendant's claims." *Williams*, No. 1–91–1599, at 2–3. Mr. Williams asked the Illinois Supreme Court for leave to appeal on the same grounds, but that court declined to review his case. Mr. Williams then unsuccessfully sought state post-conviction relief in the state courts. As the government concedes, Mr. Williams has more than exhausted his state court remedies.

■ Mr. Williams petitioned for federal habeas corpus relief. He raised several grounds for relief, but in his briefs, he only argues that: (1) his trial counsel failed to present arguments that he had a self-defense defense ·or was liable at most for second degree murder and (2) that he received ineffective assistance of counsel (a) in this regard and (b) because his trial counsel failed to file a motion ·for discovery, (c) failed to conduct a meaningful investigation into the criminal history of one of the state's witnesses, Jimmy Johnston, or (d) into the ballistics of the the bullets which hit the victim, and (e) did not interview three key witnesses, Gerald Turner, Sean Hill, and Marcus Williams, whom he says would have supported his version of the incident. These are the only claims I need consider. The other arguments were not defended, and therefore are waived. *See Kappos v. Hanks*, 54 F.3d 365, 367 (7th Cir.1995).

## II.

■ Some of the remaining grounds are procedurally defaulted because they were not raised on direct appeal, specifically Mr. William's contentions that (1) his trial counsel did not file any discovery motion and (2) did not adequately investigate the ballistics of the murder bullet. Arguments omitted from the briefs on direct appeal have been procedurally defaulted, *see Stone v. Farley*, 86 F.3d 712, 716 (7th Cir.1996) (issue that could have been presented to state court, but was not, may not be addressed in federal habeas proceedings). A petitioner may raise such arguments on collateral attack only if he can establish (1) cause·for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir., 1999).

■ Attorney error that rises to the level of ineffective assistance of counsel is cause to set aside a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 753–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Mr. Williams must demonstrate that: (1) his counsel's performance was so deficient as to fall below an objective standard of reasonableness under "prevailing professional norms" and (2) the deficient performance so prejudiced the defense as to deny the defendant a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the deficiency of counsel's performance, Mr. Williams also must overcome the strong presumption that "the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052. Finally, even if it was not professionally reasonable, a decision by counsel "does not warrant setting aside the judgment of a

criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. 2052.

■ Mr. Williams' claims do not show that the actions of his trial counsel that he challenges here were prejudicial errors. First, he does not establish that his trial attorney made no discovery motions, a claim that the lawyer denies. He maintains that the state's attorney's records support his claim, but the state's attorney filed a discovery response, which suggests the contrary. Moreover, Mr. Williams does not indicate, as he would have to, what discovery would have produced that would have changed the verdict.

■ The same argument, lack of a showing of prejudice, undermines Mr. Williams' second claim, that there was constitutionally defective inadequate assistance of counsel with regard to the failure to conduct a ballistics investigation. To excuse procedural default on these grounds under current law, Mr. Williams would essentially have to show that the results of the investigation he says his attorney should have done would create enough of a reasonable doubt that the jury would have come in with a verdict of not guilty of first degree murder, the crime of which he was convicted. But he does not do this. He merely raises the possibility that it might have done so, and that is not enough to show prejudice.

■ If Mr. Williams were actually innocent of the crime of which he was convicted, then it would constitute a fundamental miscarriage of justice for a federal court to fail to entertain his constitutional claims. *Milone v. Camp,* 22 F.3d 693, 700 (7th Cir.1994)(*citing Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). Mr. Williams does indeed contend that had his counsel provided adequate assistance, he would have been acquitted by reason of self-defense or found guilty of only second degree murder rather than the crime of first degree murder of which he was convicted. The arguments he raises with respect to the discovery issue and the ballistics test do not indicate, however, that he is actually innocent, and neither do the arguments I consider on the merits below. Accordingly, Mr. Williams cannot base his excuse for procedural default on actual innocence. The discovery and ballistics arguments are procedurally defaulted, and I will not consider them further.

### III.

Mr. Williams still has the arguments that he received ineffective assistance of counsel because his trial counsel did not (1) offer a self-defense defense or an argument that he should only be convicted of second degree murder, (2) meaningfully investigate the criminal history of state witness Jimmy Johnston, or (3) interview three key witnesses, Gerald Turner, Sean Hill, and Marcus Williams. I consider these claims on the merits.

■ The state argues that Mr. Williams has procedurally defaulted these claims because the state appeals court rejected them for lack of support in the record. That, however, is not a procedural ground: it is a substantive rejection on the merits; indeed, it is so obviously a treatment of the merits that it verges on sanctionable misconduct for the state to argue otherwise. "Procedural default ... occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992). The claims at issue here were indeed presented to the state court, which rejected them as unsupported. The state court could hardly have rejected them had they not been presented at all. It is only if the issue was waived in the state courts that it is necessary for the petitioner to establish cause and prejudice, *Bloyer v. Peters,* 5 F.3d 1093, 1097 (7th Cir.1993), and the state court did not treat these claims as waived.

Because Mr. Williams' petition was filed after April 24, 1996, it is governed by the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). AEDPA amended 28 U.S.C. § 2254(d), which now specifies that habeas relief shall not be granted unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). Neither of these conditions are satisfied here.

■■■ I first consider Mr. Williams' claim that he received ineffective assistance of counsel because of his trial counsel's failure to interview three key witnesses. As explained above, this claim requires a showing that the petition was actually prejudiced by counsel's professionally deficient performance, and counsel's performance is presumed to be adequate, although the presumption may be rebutted. *Strickland,* 466 U.S. at 687–91, 104 S.Ct. 2052. It is not deficient performance to fail to raise an argument with no real chance of success or where the objection would have been properly overruled if it had been made, *see United States v. Neeley,* 189 F.3d 670, 683–84 (7th Cir. 1999); *United States v. Draves,* 103 F.3d 1328, 1335–36 (7th Cir.1997); likewise, it was not deficient performance for counsel not to interview witnesses who had nothing to offer to Mr. Williams' defense.

The witnesses at issue here fall into that category, if the affidavits appended to this petition adequately set forth what they could testify to, as indeed those affidavits state. Sean Hill says that he saw Williams and the victim arguing, but he could not hear about what; that two others he can now identify became involved in and then left the argument; and that he heard several shots from what he believed to be different caliber guns, but he did not see

who fired them. Gerald Turner gives a substantially similar account, adding that he ran after the first shots were fired, that one of the two men who entered the argument chased him down an alley firing a gun, and that Mr. Williams ran in another direction towards his car. Mr. Hill and Mr. Turner both state they gave statements to the police saying what they knew. Marcus Williams, Mr. Williams' brother and codefendant, states that his attorney would not let him testify on Mr. Williams' behalf. He could testify that the victim had a "prior relationship" with a prosecution witness and he states that although he conveyed this fact to Mr. Williams' attorneys, it was never brought out at trial.

It is hard to see how this testimony by these three witnesses, separately or taken together, could have contributed anything to Mr. Williams' defense, whether by showing that he fired in self-defense or was guilty of only second degree murder or anything else that might exculpate or exonerate him. Mr. Hill and Mr. Turner saw an argument with various people involved, including Mr. Williams and the victim, and they heard shots, but they did not see who shot the victim or how it was done. Mr. Williams' brother only knows of a "relationship" of some sort between the victim and another witness. This might be impeachment material, but its relevance is unclear. Because it would not have made any difference to Mr. Williams' defense had these witnesses been interviewed and had they testified at trial to what they state in their affidavits, Mr. Williams' counsel did not provide ineffective assistance of counsel in failing to interview them, nor was Mr. Williams prejudiced by this failure.

■■■ I next consider whether it was inadequate assistance of counsel for Mr. Williams' attorney not to have more fully investigated the criminal history of witness Jimmy Johnson, the witness whose rap sheet was subpoenaed after jury selection began for Mr. Williams' trial. Mr. Williams, as explained, would have to have been prejudiced by this lapse. He was

not. Suppose that Mr. Johnson's criminal history had been exposed and he had been utterly discredited—although juries often believe witnesses with criminal histories. Still, there were other witnesses against Mr. Williams, and he offers no reason to think that had Mr. Johnson been successfully impeached that it would have made a difference. A jury may decide to believe two witnesses who say the same thing, even if one of them is shown to be untrustworthy.

Finally I consider Mr Williams' contention that his counsel was constitutionally deficient because she did not present arguments in support of Mr. Williams' theory that he should have been acquitted on grounds of self-defense or convicted at most of second degree murder. This basis for a claim of ineffective assistance of counsel fails because, so far as Mr. Williams has shown, there were no credible arguments for either of these theories. It is not ineffective assistance to fail to make hopeless or farfetched arguments, and the arguments that Mr. Williams urges here, based on the possibility of impeaching Mr. Johnson or the testimony of Messrs. Hill and Turner and Marcus Williams, are hopeless or farfetched.

Mr. Williams' petition for habeas relief is therefore DENIED.